IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

v.	CRIMINAL ACTION NO. 2:19-cr-00131

ROBERT LOGAN GORMAN

MEMORNADUM OPINION AND ORDER

Pending before the court is an Emergency Motion for Compassionate Release, [ECF No. 42], filed by Defendant Robert Logan Gorman. Despite the fact that the Motion was properly served, the United State of America (the "Government") inexplicably failed to respond. I am perplexed by the Government's oversight. Nevertheless, the Motion is **DENIED without prejudice** for the reasons that follow.

I.	Background

On September 26, 2019, Mr. Gorman was sentenced to 78 months in prison, followed by three years of supervised release upon his guilty plea to unlawful drug user in possession of a firearm in violation of 18 U.S.C. §§922(g)(3) and 924(a)(2), and illegal possession of a firearm silencer in violation of 26 U.S.C. §§5861(d) and 5871. *See* [ECF No. 26]. Mr. Gorman has been in custody in connection with the present offenses since October 6, 2018, which amounts to more than 20 months of actual incarceration. *See Public Info. Inmate Data* Ex. D [ECF No. 42–4] 3. Not a single

incident report has been filed against Mr. Gorman during his incarceration. *Progress Report* Ex. E [ECF No. 42–5] 1.

Mr. Gorman is currently incarcerated at Federal Correctional Institution Hazelton ("FCI Hazelton"). FCI Hazelton is a medium security institution. It houses a total of 1,653 inmates (452 inmates at the secure female facility and 1,201 at the FCI). *FCI Hazelton*, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/mil/ (last visited July 27, 2020). According to the Bureau of Prisons ("BOP"), FCI Hazelton currently has one confirmed positive test of COVID-19 amongst inmates and one confirmed positive test amongst staff. *See* COVID-19 Cases, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus (last visited July 27, 2020). Only 73 inmates have been tested at the FCI Hazelton. *Id.*

Mr. Gorman now petitions the court, arguing that the combination of his health issues, the COVID-19 pandemic, and prison conditions constitute "extraordinary and compelling reasons" for his release. Mr. Gorman suffers from multiple health issues. He has chronic obstructive pulmonary disease ("COPD"), for which he regularly takes medication daily. *See* Ex. F [ECF No. 48]. He was diagnosed with bladder cancer and required chemotherapy in 2012. *See id.* His medical records reflect that his bladder cancer has not been resolved and that he continues to undergo testing and receives medication for his illness. *Id.* He also suffers from anxiety, obesity, and asthma. *Id.* He is prescribed an albuterol inhaler to treat his asthma, though his medical records do not specify the severity of his condition. *See id.*

II. **Discussion**

The First Step Act "embodies Congress's intent to reduce the Bureau of Prison's authority over compassionate release petitions and authorizes the district courts to exercise their independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence." *United States v. Galloway*, No. CR RDB-10-0775, 2020 WL 2571172, at *3 (D. Md. May 21, 2020) (internal citations removed); *see also United States v. Stephenson*, No. 3:05-CR-00511, 2020 WL 2566760, at *5 (S.D. Iowa May 21, 2020) ("Unqualified deference to the BOP no longer makes sense now that the First Step Act has reduced the BOP's role.").

For me to reduce Mr. Gorman's sentence under compassionate release, I must find that Mr. Gorman has exhausted his administrative remedies, has demonstrated "extraordinary and compelling reasons," is not a danger to the safety of others, and find that his release is consistent with § 3553(a) factors. *See e.g., United States v. Howard*, No. 4:15-CR-00018-BR, 2020 WL 2200855, at *2 (E.D.N.C. May 6, 2020); U.S.S.G. § 1B1.13 (2018). He has not satisfied all of those requirements, and I do not reduce his sentence today.

### (a) Exhaustion

Section 3582(c)(1)(A) provides that:

> … the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf *or* the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, *whichever is earlier*, may reduce the term of imprisonment…

18 U.S.C. 3582(c)(1)(A) (emphasis added). Prior to the enactment of the First Step Act, only the Director of BOP could file a motion for compassionate release. The First Step Act amended this provision to permit an inmate to file a motion in federal court seeking compassionate release, provided certain circumstances were satisfied. Put plainly, the court may modify a term of imprisonment upon the earliest of one of three events:

1. When the Director of BOP has made a motion;

2. When the defendant has exhausted his or her administrative remedies with BOP and petitioned the court;

3. When 30 days have lapsed from the date of the request to BOP and defendant has petitioned the court.

*Id.*

The language of the statute is clear. There are two ways for a defendant to petition the court for compassionate release. Those two options are alternatives. With the first option, the defendant must fully complete BOP's administrative appeals process. With the second option, "the statute's plain text states only that thirty days must past after the defendant requests compassionate release from the warden. No more, no less." *United States v. Carter*, ---F. Supp.3d----, ---, No. 2:19-CR-00078, 2020 WL 3458598, at *2 (S.D.W. Va. June 25, 2020).

In this case, I **FIND** that Mr. Gorman has met the necessary criteria outlined in § 3582(c)(1)(A) to petition this court for compassionate release. On April 29, 2020, Mr. Gorman filed a request for compassionate relief with the Warden at FCI

Hazelton. *Request for Reduction in Sentence Form*, Ex. G [ECF No. 42–7]. The Warden responded, denying the request on May 15, 2020. *Warden's Response to Inmate*, Ex. H [ECF No. 42–8]. Defendant filed the instant Emergency Motion for Compassionate Release, [ECF No. 42], on June 26, 2020. Thus, thirty days had passed between the Warden's receipt of Defendant's initial request and when the Defendant petitioned the court. Mr. Gorman has satisfied the requirements of the statute to bring his motion.

### (b) Extraordinary and compelling reasons for release

Once an inmate has satisfied administrative exhaustion, courts may reduce their sentences upon a finding of "extraordinary and compelling reasons." *See* 18 U.S.C. § 3582(c)(1)(A).

There are "disagreements [among district courts] about the precise definition of 'extraordinary and compelling reasons' justifying compassionate release."[1] *United States v. Cotinola*, No. 13-CR-03890-MV, 2020 WL 2526717, at *3 (D.N.M. May 18, 2020). But many courts, including this court, have found "'extraordinary and compelling' reasons 'supporting release on the basis of a combination of dire prison conditions and underlying health conditions that increase the likelihood of severe

---

[1] The specific extraordinary and compelling reasons listed in the Sentencing Guidelines for BOP to consider include i) the defendant is suffering from a terminal or serious medical condition; ii) age of defendant; iii) family circumstances of defendant; and iv) "other reasons." U.S.S.G. § 1B1.13; *United States v. Bass*, No. 1:10-CR-166 (LEK), 2020 WL 2831851, at *3–4 (N.D.N.Y. May 27, 2020). "Following the passage of the First Step Act, courts may independently determine whether such 'other reasons' are present in a given case, without deference to the determination made by BOP." *United States of America v. Thaher,* No. 17 CR. 302-3 (KPF), 2020 WL 3051334, at *4 (S.D.N.Y. June 8, 2020).

illness from COVID-19.'"[2] *United States v. White*, No. 2:17-CR-00198-4, 2020 WL 3244122, at *3 (S.D.W. Va. June 12, 2020) (citing *United States v. Bass*, No. 1:10-CR-166 (LEK), 2020 WL 2831851, at *7 (N.D.N.Y. May 27, 2020)); see also *United States v. Sawicz*, No. 08-CR-287 (ARR), 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020) (finding an "extraordinary and compelling reason" on the basis of the inmate's hypertension and conditions at FCI Danbury); *United States v. Foreman*, No. 19-CR-62, 2020 WL 2315908, at *2–4 (D. Conn. May 11, 2020) (finding an "extraordinary and compelling reason" on the basis of the inmate's hypertension and age of 58, in combination with conditions at FCI Danbury); *United States v. Scparta*, No. 18-CR-578 (AJN), 2020 WL 1910481, at *2, 9 (S.D.N.Y. Apr. 20, 2020) (finding an "extraordinary and compelling reason" on the basis of the inmate's hypertension, age of 55, and conditions at FCI Butner, which had 60 infected inmates); *United States v. Soto*, No. 18-CR-10086, 2020 WL 2104787, at *2 (D. Mass. May 1, 2020) (finding an "extraordinary and compelling reason" on the basis of the inmate's hypertension and the presence of 27 reported inmate cases in his facility); see also *Groups at Higher Risk for Severe Illness*, Ctrs. for Disease Control & Prevention (May 14, 2020),

---

[2] "Section 1B1.13 of the United States Sentencing Guidelines contains the only policy statement issued by the Sentencing Commission pertaining to compassionate release," which has not been updated since the passage of the First Step Act. See *Bass*, 2020 WL 2831851, at *3; U.S.S.G. § 1B1.13.[2] Thus, courts have taken this to mean that "there does not currently exist, for purposes of satisfying the First Step Act's 'consistency' requirement, an 'applicable policy statement.'" See e.g., *United States v. Redd*, 2020 WL 1248493, at *6 (E.D. Va. Mar. 16, 2020); *United States v. Brant*, No. 218CR20155TGBMKM1, 2020 WL 2850034, at *4 (E.D. Mich. June 2, 2020); *United States v. Brooks*, No. 07-CR-20047-JES-DGB, 2020 WL 2509107, at *3 (C.D. Ill. May 15, 2020).

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-athigher risk.html). I previously granted compassionate release to a defendant who was immunocompromised—suffering from a liver disease, Hepatitis C. See *White*, 2020 WL 3244122, at *6; s*ee also Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 23, 2020) (listing "immunocompromised state" as an underlying medical condition causing an "increased risk for severe illness from COVID-19").

I recently held in *United States v. John Delaney Wilson*, ---F. Supp.3d----, ---, No. 2:18-cr-00295, 2020 WL 4287592 at *2 (S.D.W. Va. July 27, 2020), that I should not find "extraordinary and compelling" reasons exist to grant release because of COVID-19 unless the inmate has a condition that makes him or her more at risk for developing a serious illness from COVID-19 and the facility where the inmate is housed has conditions such that its inmates are at a high risk of contracting COVID-19. In deciding which conditions result in an inmate being a higher risk for COVID-19, I will defer to CDC's list of medical conditions causing an increased risk of severe illness from COVID-19. See *Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 27, 2020). Using CDC guidance will allow for more predictable standards in deciding which defendants have "extraordinary and compelling" reasons justifying release.

In *Wilson*, I also emphasized that if an inmate can demonstrate that he or she

7

has a condition identified by CDC, next, the defendant must show that his or her prison conditions are such that BOP cannot effectively prevent the spread of COVID-19. Factors include but are not limited to the steps BOP has taken to stop the spread of COVID-19 in that particular prison and steps to follow CDC guidance, the ability of inmates to socially distance, the amount of hygiene products and face masks provided to inmates, and the number of COVID-19 cases in that prison.

Here, Mr. Gorman has presented sufficient evidence that he has a condition that makes him at risk for developing a serious illness from COVID-19. The CDC lists COPD, obesity (body mass index of 30 or higher), and cancer as underlying medical conditions that present an increased risk for a person of any age of developing a severe illness from COVID-19. *See Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 27, 2020). Additionally, the CDC lists moderate-to-severe asthma as an underlying condition that might present an increased risk of severe illness from COVID-19. *Id.* Mr. Gorman's medical records indicate that he has COPD, which causes him to be at "low lung volumes." Ex. F [ECF No. 48]. His records reflect that he suffers from a "neoplasm of unspecified behavior of bladder" and that he continues to take medication daily for this condition. *Id.* It is unclear to the court whether this diagnosis means that Mr. Gorman currently has bladder cancer or is in remission. Regardless, his records indicate that the cancer is not entirely resolve. *See id.* Mr. Gorman is obese; however, his exact body mass index is unknown to the court. *See id.* Mr.

Gorman also suffers from asthma, though there is no indication as to whether his asthma is mild versus moderate-to-severe. *Id.* The combination of all of these medical conditions, particularly the well-documented presence of COPD, convinces me that Mr. Gorman is at risk for developing a severe illness from COVID-19.

Despite presenting sufficient evidence that Mr. Gorman suffers from medical conditions identified by CDC as placing him at a risk for severe illness from the virus, he has not demonstrated that he is housed at a facility with a high risk for contracting COVID-19. As previously mentioned, Defendant in this case is currently imprisoned at FCI Hazelton. According to BOP, FCI Hazelton currently has one inmate and one staff member who have tested positive for the COVID-19 virus. *COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus (last visited June 27, 2020). While the number of positive COVID-19 tests in a facility is not dispositive of BOP's ability to prevent the spread of the virus, a high number of positive cases is a clear indication that a person housed at a facility is at high risk. Absent that showing, it is difficult to evaluate the particularized threat of the virus to a defendant. I am concerned that the reported positive tests at FCI Hazelton do not accurately reflect the actual number of cases in the facility. BOP reports that only 73 of the 1,653 inmates have been tested.[3] *COVID-19 Cases*, Fed. Bureau of Prisons,

---

[3] FCI Hazelton houses a total of 1,653 inmates. BOP reports that 452 inmates are housed at the secure female facility and 1,201 inmates are housed at the FCI. FCI Hazelton, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/mil/ (last visited July 27, 2020). It is not clear to the court whether the reported 73 tests that were administered to inmates at FCI Hazelton includes the inmates housed at the secure female facility. BOP does not report any separate numbers about COVID-19 testing and the secure female facility.

https://www.bop.gov/coronavirus (last visited June 27, 2020). I will not, however, find that a facility presents a high risk simply based off speculation. While any number of COVID-19 cases within the prison context is great cause for concern, simply a generalized assertion of the existence of the pandemic alone should not independently justify compassionate release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Evaluating "extraordinary and compelling reasons" for a reduction in sentence does not exist within a vacuum. The reasons should be balanced with the relative "danger to the safety of others or the community" posed by the defendant's release and a consideration of the § 3553(a) factors. *See United States v. White*, --- F.Supp.3d ----, ----, No. 2:17-CR-00198-4, 2020 WL 3244122, at *5 (S.D.W. Va. June 12, 2020). I therefore now turn to those additional considerations.

### (c) Danger and Safety to the Community and Section 3553(a) Factors

The relevant policy statement under United States Sentencing Guideline § 1B1.13 requires that for a reduction in the term of imprisonment under 18 U.S.C. § 3582(c)(1)(A), a court must find that the "defendant is not a danger to the safety of others or the community" and consider the § 3553(a) factors. Section 3142(g) sets out factors to help with the dangerousness assessment, including the following:

> (1) "the nature and circumstances of the offense charged;" (2) "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, ... community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history;" and (3) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

*Bass*, 2020 WL 2831851, at *8 (quoting 18 U.S.C. § 3142(g)).

Although he does not have an extensive criminal history, the nature and characteristics of the offenses of conviction in this case indicate that Mr. Gorman poses a potential danger to the safety of the community. Mr. Gorman's behavior has revealed an affinity for illegal use of firearms. His offenses of conviction in this case involved possession of a loaded semi-automatic firearm, a high-capacity magazine, and an illegal homemade silencer as well as methamphetamine. He was a prohibited person at the time he possessed these weapons because of his methamphetamine use. *See* Presentence Report [ECF No. 33] (sealed). The Presentence Report details a series of previous interactions between Mr. Gorman and law enforcement that involved illegal firearm and drug use. The possession of these types of lethal weapons in combination with illegal drug use presents a grave danger to the community that should not be tolerated.

Mr. Gorman's health conditions do concern me. But because of the potential danger posed by Defendant's release and because there is not sufficient evidence *at this time* that the situation at FCI Hazelton creates a high risk that Defendant will contract COVID-19, I do not find that "extraordinary and compelling reasons" exist that would justify his release. Accordingly, Defendant's Emergency Motion for Compassionate, [ECF No. 42], release is **DENIED without prejudice**.

III. Conclusion

The court **DENIES without prejudice** Defendant's Emergency Motion for Compassionate Release, [ECF No. 42]. The court **DIRECTS** the Clerk to send a copy

11

of this Order to Defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

                                                        ENTER:     June 28, 2020

*[Signature: Joseph R. Goodwin]*

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE